KAY CONSTRUCTION COMPANY *v.* COUNTY
COUNCIL FOR MONTGOMERY
COUNTY ET AL.

[No. 123, September Term, 1961.]

480

*Decided February 14, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, MARBURY and SYBERT, JJ.

*R. Robert Linowes,* for appellant.

*Howard J. Thomas,* for Connecticut Avenue Park Citizens Association and Joan Drown, part of appellees.

*Joseph P. Blocher, Deputy County Attorney,* with whom were *Alfred H. Carter, County Attorney,* and *Richard J. Sincoff, Assistant County Attorney,* on the brief, for other appellee, Montgomery County.

SYBERT, J., delivered the opinion of the Court.

This appeal questions the validity of an order of the Circuit Court for Montgomery County which sustained a finding by the County Council for that County, acting as a District Council, that there was "good cause shown" (as required by the Zoning Ordinance) in appellees' petitions for reconsideration of a previously adopted rezoning resolution. The rezoning would have allowed appellant to construct low density apartment houses on a tract of land owned by it. The Council granted the petitions for reconsideration and after a rehearing rescinded the rezoning resolution. The appellant makes the further point that the record does not sustain the Council's action rescinding the rezoning resolution.

The original application was filed by the appellant with the Council in December, 1958, requesting rezoning of approximately 12 acres of land located at the northwest corner of Viers Mill Road and Connecticut Avenue in Wheaton, from the R-60 Zone (single-family dwellings) to the R-20 Zone

(medium density, multi-family) or R-30 zone (low density, multi-family). The Council held a public hearing on February 11, 1959, at which extensive testimony was given by proponents and opponents in regard to the effect that the proposed rezoning would have on traffic, schools, and the neighborhood in general. The Council did not render its decision until November, 1959, granting by a four-to-three vote the rezoning of 8.5 acres of the 12 acre tract to the R-30 Zone (low density, multi-family), with certain set backs. It found from the evidence presented that there had been substantial change in the neighborhood since original zoning so as to warrant rezoning. It took note of the heavy traffic dual lane highway and intersection that the property borders as well as the fact that it faces, across Connecticut Avenue (extended), the semi-commercial telephone exchange building behind which is the only large development of R-40 semi-detached dwellings in the county, and that the Belair Swimming Club is located directly across Viers Mill Road from appellant's property. The Council also recognized the fact that it was denying the same requested zoning to two other tracts of land across Viers Mill Road from the subject property, pointing out that the problems involved with development of those properties had been solved. Finally, it took cognizance of the fact that appellant's property had been recommended for multi-family zoning by the Master Plan for Kensington-Wheaton, which had been adopted by the Planning Commission in the interim between the original hearing and the publication of the Council's resolution.

Opponents of the rezoning—certain residents of the area and a citizens' association—on December 31, 1959, filed two petitions for reconsideration of the resolution granting the rezoning. On the same day, one of the councilmen who had voted with the majority for rezoning resigned from the Council. When a later vote on the two petitions resulted in a three-three deadlock, the Council postponed its decision until the appointment of a new member. On March 1, 1960, after a new member was named, the Council by a four-three vote adopted a resolution which granted reconsideration and a re-

hearing in regard to its original rezoning resolution, the new Council member voting for the resolution along with the three members who had opposed the rezoning. The resolution granting the reconsideration merely stated that the Council "finds for good cause shown that its decision should be reconsidered".

Section 107-41 of the Zoning Ordinance for the Maryland-Washington Regional District in Montgomery County (1955 ed.), now § 104-42, Montgomery County Code (1960 ed.), relating to petitions for reconsideration, states in part:

> "The decision of the district council on any application for a map or text amendment shall be final except that a petition requesting reconsideration of the district council's decision on any application may be filed * * *. The petition may be granted by resolution of the district council *for good cause shown* and, if granted, the decision of the district council may be rescinded and the application thereafter by resolution of the district council approved, denied or dismissed with or without further hearing as may be required by law * * *." (Italics ours.)

On March 22, 1960, the rehearing was held and on April 12, 1960, the County Council by the same four-three vote adopted a resolution rescinding its original resolution rezoning the subject property for apartments and denying appellant's rezoning application.

Appellant appealed to the Circuit Court for Montgomery County, asking that the resolution granting reconsideration be set aside because no good cause had been shown for granting it; that the final resolution denying the application for rezoning be set aside, and that the original rezoning resolution be declared in effect. After a hearing the court remanded the case to the Council with the requirement that it set forth in an opinion what factors constituted "good cause shown" as required by the Zoning Ordinance as a condition for reconsideration. In the opinion which it subsequently adopted by a four-three vote, the Council set out ten factors contained in the two petitions for reconsideration which it felt met the

"good cause shown" requirement and supported the Council's stated conclusion that it had made "a plain and simple error in judgment based on the evidence of record". The court, after a second hearing, found that the ten reasons mentioned in the Council's opinion constituted good cause shown and affirmed both the resolution granting the petitions for reconsideration and the resulting resolution which rescinded the rezoning of appellant's property.

In this appeal from the lower court's order, appellant contends that the requirement under the Ordinance of "good cause shown" was not met by the two petitions for reconsideration, nor by the Council's admission of error in judgment which it felt warranted reconsideration of the original resolution. In any event, appellant maintains, there was insufficient evidence to support a reversal of the R-30 classification granted in the original resolution.

With respect to whether a legislative body of a municipal corporation, such as the County Council, has the power to rescind an ordinance or resolution previously adopted, it has been said that such power of rescission exists provided it "is in conformity to the law applicable and the rules and regulations adopted for the government of the body". 4 McQuillin (3rd ed.), *Municipal Corporations,* § 13.49. It is settled law in this state that the "requirements of the ordinance are binding on the Commissioners sitting as a District Council [here, the County Council sitting as a District Council] and they may exercise their zoning powers only by following the procedure specified * * *." *Crozier v. Co. Comm. Pr. George's Co.,* 202 Md. 501, 506, 97 A. 2d 296 (1953). The issue thus narrows to a determination of whether the reasons relied upon by the Council as warranting reconsideration met the Ordinance's requirement of "good cause shown".

The Zoning Ordinance does not define what conditions must be met to establish "good cause shown". While it may not be possible to state an all-embracing definition of that phrase, it is possible to ascertain its general meaning by an examination of some of the cases where the problem of applying it has arisen. What will measure up to a showing of "good cause"

in a particular case will depend upon the circumstances of that case.

We have found no case in this Court involving an express statutory requirement that good cause be shown for reopening a zoning case. However, in *Zoning Appeals Board v. McKinney*, 174 Md. 551, 199 Atl. 540, 117 A.L.R. 207 (1938), this Court interpreted the Baltimore City ordinance, which contained no such express provision, as implicitly requiring such a showing in order to permit a reopening. There the Court said (174 Md. at 564): "It may be conceded without discussion that the Board has the right to correct errors in its decisions caused by fraud, surprise, mistake or inadvertence, which any agency exercising judicial functions must have, to adequately perform its duties." The Court then considered authorities from other States and concluded that in the absence of such facts it was beyond the power of the Board, a quasi-judicial body, to reopen the case, which involved an application for a gasoline station permit. This Court declined to apply *McKinney* to the rescission of an actual rezoning granted by the County Commissioners of Prince George's County in *Dal Maso v. County Com'rs.*, 182 Md. 200, 34 A. 2d 464 (1943); but in holding that the County Commissioners, under the applicable statute, which said nothing about a requirement for showing good cause, could reconsider a rezoning case without any such showing as was held necessary in *McKinney*, the Court stated that the County Commissioners had such power, but this statement was qualified by the further statement, quoted from 37 Am. Jur., *Municipal Corporations*, § 150, p. 762, that this was true "in the absence of statute or a rule to the contrary." (182 Md. at 207.)

Here we do have a statute or rule to the contrary requiring good cause to be shown. For the meaning of good cause, *McKinney* still seems a valid guide, even though *Dal Maso* declined to import or imply a requirement of good cause in the statute there involved, which did not use the term. Here we have an entirely different problem of statutory construction —the meaning of the term when it is used in a statute or ordinance—and we find no need to examine the precise scope of *Dal Maso*. (Cf. *Md. Clothing Mfrg. Co. v. Baltimore*, 207 Md.

165, 170, 113 A. 2d 743 (1955), where *McKinney* was discussed without any reference to *Dal Maso*.)

The rationale of *McKinney* has been applied by other courts, even in the absence of a statutory requirement for showing good cause, in determining whether a zoning board—acting as a quasi-judicial body—has properly reopened and reversed its own decision, and the text writers are in general accord. The Connecticut rule was laid down in *St. Patrick's Church Corp. v. Daniels,* 154 Atl. 343 (Conn. 1931), where it was said (at 345), "* * * the test to be applied is whether new or additional facts appear *showing a change in conditions or other considerations materially affecting the merits,* intervening since the former decision." (Italics added.) See also *Rommell v. Walsh,* 16 A. 2d 483 (Conn. 1940); *Dadukian v. Zoning Board of Appeals,* 68 A. 2d 123 (Conn. 1949); *Sipperley v. Board of Appeals on Zoning,* 98 A. 2d 907 (Conn. 1953); *Lattsco v. Mutual Mortgage and Investment Co.,* 20 Oh. Opinions 153 (1941); 1 Yokley, *Zoning Law and Practice* (2nd ed.), § 128; 2 Metzenbaum, *Law of Zoning* (2nd ed.), Ch. IX j 6, pp. 921-928; 1 Rathkopf, *The Law of Zoning and Planning,* Ch. 41, § 19.

We recognize that the cases cited dealt with zoning boards exercising quasi-judicial powers, while, as we have indicated, the instant case involves the Council acting as a legislative body. However, the reasoning applied in those cases has some relevance to the issue before us. The Ordinance, by requiring that "good cause" be shown as a necessary condition to the granting by the Council of a petition for reconsideration, has in effect grafted upon that agency a limitation which exists in regard to quasi-judicial bodies even in the absence of statute. It permits the Council to grant a petition for reconsideration only where there appears to be a substantial reason for doing so, as defined in the cases cited.

In regard to the meaning of "good cause" in another area of the law, the Supreme Court of California has interpreted in a number of cases a section of that State's workmen's compensation statute, § 5803 of the Labor Code (Deering's California Codes), which contains a provision similiar to that in

the Zoning Ordinance under consideration here. The California statute reads, in part:

"*** At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the commission may rescind, alter, or amend any such order, decision or award, *good cause appearing therefor.*" (Emphasis supplied.)

In the leading case interpreting this part of the act (then § 20(d) of the Workmen's Compensation Act), *Merritt-Chapman & Scott Corp. v. Industrial Accident Comm.* (Calif. 1936), 57 P. 2d 501, the Supreme Court of California held that the Commission had erred in finding the requisite "good cause" when it set aside its original award to an employee in favor of a new order upon rehearing. The court found the Commission did not have before it at the rehearing any competent, relevant evidence which had not theretofore been before it and passed upon, and the court went on to say (at 502), "*** It is self-evident, we think, that, if the words, 'good cause appearing' are to have any place or purpose in said statutory provision, the power of the commission to change its former orders or awards may not be predicated upon *a mere change of opinion by the commission as to the correctness of its original decision* * * *." (Emphasis supplied.) See also *Fidelity & Cas. Co. v. Industrial Acc. Comm.,* 176 Cal. App. 2d 541 (1959); *Pullman Co. v. Industrial Accident Comm.* (Calif. 1946), 170 P. 2d 10; *State Compensation Ins. Fund v. Industrial Acc. Com'n* (Calif. 1946), 166 P. 2d 310; *Clendaniel v. Industrial Accident Comm.* (Calif. 1940), 103 P. 2d 993. For substantially similar treatment of "good cause" in other fields, see *Hines v. Royal Indemnity Co.* (6th Cir. 1958), 253 F. 2d 111, 114; *Svoboda v. Svoboda* (Iowa 1953), 60 N. W. 2d 859, 863; *Pines v. District Court In and For Woodbury County* (Iowa 1943), 10 N. W. 2d 574; *Greeley & Loveland Irr. Co. v. Handy Ditch Co.* (Colo. 1925), 240 Pac. 270. In the Colorado case, which dealt with a requirement of "good cause shown", sufficient to allow review of a decree within a stated time limit, the court said that good cause could consist of material matters arising subsequent to

the decree on a showing of *fraud, accident or mistake* or denial of opportunity to present proofs. Cf. *Bucher v. Ober,* 204 Md. 568, 572, 105 A. 2d 480 (1954).

It is obvious in the case at hand that the Council did not have before it any showing such as was held necessary in the *McKinney* case, *supra,* upon which to base its finding that the appellees had met the requirement of "good cause shown" so as to merit a granting of their petitions for reconsideration. The Council did not allege that there was any fraud, surprise, mistake or inadvertence as to the facts which were before it for consideration at the time of its original deliberation on the request for rezoning, or as to any other factor, or that any new facts had been developed. In its own words, it averred that it had made "a plain and simple error in *judgment* based on the *evidence of record*" (italics added), as claimed in the petitions for reconsideration. The ten points which the Council listed to support this conclusion all relate to matters which were, with one exception, before the Council at the original hearing for rezoning, i.e., the traffic situation, the types of zoning classification surrounding the subject property, its topography, the contemporaneous refusal to grant similar requests for rezoning of two tracts across from appellant's property, and other matters relating to the character of the neighborhood. That all these factors were considered by the Council at the first hearing is obvious from a reading of the resolution granting the rezoning. The only exception was the Master Plan for the Kensington-Wheaton Planning Area, adopted after the original hearing but before the Council issued the rezoning resolution. As mentioned earlier, it was alluded to by the Council in the resolution as a factor in favor of the rezoning.

Examination of the petitions for reconsideration discloses that they do not advance any valid reasons in the way of "good cause" but rather that they amount in large part to a mere reargument based on the evidence originally presented to and accepted by the Council at the first hearing as adequate grounds for the rezoning, but rejected by it as such in its opinion on remand. In addition, several other allegations, not mentioned in the Council's opinion, were made in the petitions

in regard to: The legality of the proceedings as they were conducted and the manner of voting by the Council; an alleged misstatement by one of the councilmen which, it was claimed, affected the decision; the alleged absence of a true hearing before the Council, and the alleged illegality and unconstitutionality of the resolution granting the rezoning. We shall merely state that all of these allegations were answered fully by the appellant in its answers to the petitions for reconsideration and that upon our own examination none of them has any merit, a fact apparently recognized by the Council since it failed to rely directly on any of them in stating its reasons for granting the petitions for reconsideration.

It is apparent that the Council's "plain and simple error of judgment" was in reality a mere change of mind, a shift of majority opinion occasioned by the substitution of a councilman of one conviction for a councilman of another conviction. It is unnecessary that this Court now attempt to enumerate all the varied circumstances which may constitute "good cause shown" under the Zoning Ordinance in question. It is sufficient to conclude, as we do, that mere "change of mind" by substitution for one councilman of another who holds contrary views from those of his predecessor, does not amount to "good cause shown". *Merritt-Chapman & Scott Corp. v. Industrial Accident Commission, supra.* Cf. *Meltee v. County Com'rs,* 212 Md. 357, 366, 129 A. 2d 136 (1957).

Appellees urge that appellant waived its right to argue that the Council lacked "good cause" for granting the petitions for reconsideration by filing answers to each petition and introducing evidence at the rehearing. The contention is not well founded. The Zoning Ordinance specifically provides for a "response" to petitions for reconsideration as part of the administrative procedure, and in its answers appellant challenged the sufficiency of the petitions, and argued its cause at the subsequent hearing. This was the established procedure which it was necessary to follow, and until appellant had exhausted the administrative remedy, it is well settled that it was not entitled to judicial relief. *Albert v. Pub. Serv. Commission,* 209 Md. 27, 120 A. 2d 346 (1956). Moreover, this Court has construed statutory provisions for appeal from decisions of

administrative agencies as applicable only to orders that are final in nature, and not to preliminary procedural or interlocutory orders. *Celanese Corp. v. Bartlett,* 200 Md. 397, 90 A. 2d 208 (1952); *Bogley v. Barber,* 194 Md. 632, 72 A. 2d 17 (1950). The resolution of the County Council granting reconsideration was not an order final in nature from which an appeal could be taken. Appellant was thus entitled, upon appeal from the subsequent unfavorable decision of the Council after the rehearing, to a review of the legality of the reconsideration.

We think the resolution by the Council granting the petitions for reconsideration was without foundation and the order of the lower court affirming that resolution was erroneous. Any other conclusion would strip the words "good cause shown" of any intelligent or purposeful meaning. We must presume that the legislative body did not intend to indulge in a vain use of words or to leave parts of the Ordinance without sense or meaning, but rather intended that every part should be operative. *Stembler v. Capitol Heights,* 221 Md. 113, 156 A. 2d 430 (1959).

We note that the appellees, in their brief, concede that the question of approval or denial of the rezoning request in question was a "fairly debatable" issue, and that the lower court so stated.

In view of our finding of lack of "good cause shown" for reconsideration of the original rezoning, we need not consider whether there was sufficient evidence to support the resolution rescinding the rezoning. That resolution was a nullity, and the rezoning will stand.

> *Order reversed and case remanded for the entry of an order in conformity with this opinion; costs to be paid by appellees.*